LLC Appellant. Mr. Sutton, the appellant. Mr. Moran, the appellate. Good morning, Your Honor. Morning. I'm Steve Sutton, and I represent U.S. Engineering Company. We're here today not to discuss the balance of interest in the Medicare Act. We are here today on appeal from a summary judgment granted by the lower court on, after implying a time limitation on U.S. Engineering's notification to Surety on a performance bond that it issued under Section 3.2 that required that it had to have provided that notice before it completed any work that was left undone by a defaulting subcontractor. There were three conditions preceding to establishing the surety's liability under the bond. In Section 3, Section 3.1 had specific time limits and detailed time provisions with regard to a pre-default notice in order to have a conference among the surety, the contractor, and U.S. Engineering. And it specifically says then in Section 4, if those notice periods aren't provided, the surety cannot be discharged in its entirety, but has to demonstrate actual prejudice resulting therefrom. But in Section 3.2, which was the core issue of the lower court's decision, it says that the U.S. Engineering had to provide notice of a default, notice that it terminated the contractor, and provide notification to the surety, but has no specific time period for any of those things to occur or any particular order. So you're not disputing that the end notifies the surety as a condition precedent, but simply that the timing doesn't apply there? That's correct. So it does have to notify the surety. The time limit imposed by the trial, or the lower court, is not stated there. You're saying that there is no doctrine of reasonableness involved in that question of how soon you can have, how soon you must give the notice? No, I don't believe there is, Judge. And you can give it, if you'd never given it before, you can give it today? Yes, we could. We could give it today, and the question then becomes what the consequence is, because if you understand the facts, and I'm sure you do, the facts here, in September 2013, we notified the contractor that it was performing after having notified them many times, terminated the construction contract, and then without the subcontractor there to complete its work, we had to complete the work for it. And we went ahead and did that at the cost of $586,000, and then that took about 60 to 90 days. And then in June of 2014, notified the surety that the contract had been defaulted, the termination had been made, the work had been completed, and asked them to pay the completion costs incurred by U.S. Engineering. So the time period between the notification of the surety and the completion of the work, once it was completed, it was completed, and there wasn't any particular prejudice to the surety after that point. And the Court relied heavily upon the Hunt case, which is the D.C. Circuit Court of Appeals opinion in 2009, which found that, two things it says, one of them which we fully support, which is that it was trying to interpret the surety bond as actually written, which we applaud. And the second part of it, it said that the surety had not notified, excuse me, a contractor in U.S. Engineering's position, Hunt, had not notified the surety before it completed the work, and therefore, because there was specific language in the bond that required that that says there had to be reasonable notice to the surety, it couldn't recover under the bond. But that language isn't in this bond, not in 3.2 or anywhere else. There is a notice requirement in this bond. There's a notice requirement, but there's not a timing of the notice requirement that the lower court imposed that it had to occur. The lower court could have done a theory of reasonable notice to that. The Court said that, Your Honor. I understand that, but the question as to whether U.S. Engineering could possibly have had to do that is not stated in the bond. In addition to the Hunt case, the Court relied upon Section 5, which is the provision of the bond that details the obligations of the surety if Section 3, the conditions preceding are satisfied. So in that section, it says that it sets out alternate performances available to the surety, and they are either, A, to have the terminated subcontractor complete the work with U.S. Engineering's consent, B, to have another contractor complete the work with our consent or have the surety do it itself, or, and then finally in Subpart 4, do none of that, investigate the facts and either pay U.S. Engineering what it believed its liability was or deny that there was any liability and inform U.S. Engineering, which is, and the latter is what it did. And it did that after we notified them about the claim. They asked for more information. We provided our entire file with regard to United Sheet Metal, including the plans, drawings, specifications, billings, invoices, labor costs, labor hours. Why was notice not given back at the time of the termination? Well, part of it was the time, they were under the gun, U.S. Engineering had to fill in and that Sheet Metal hadn't completed and so there was a timing requirement because the schedule for the contract to be completed was on it now and part of it, but the other part of it. How did that prevent you from giving notice? It didn't, Judge. I'm not offering an excuse here. I'm just trying to say that the facts on the ground were that it was working on getting the work done and the second part was it should have done so sooner after it completed the work is completed, there was no difference to the surety whether it was a month or two months later. I mean, the work was done. Once the work is completed, they've lost their options under Section 5 of the contract? Well, Your Honor, Section 5 says, first of all, that Section 3 has to be satisfied before Section 5 comes into play. The opening clause to Section 5 says once Section 3 is satisfied, then the surety has the alternative. Surety has options, right? They can cajole the sub to finish the job, they can get another sub or they can just pay you the difference. Or they can do none of those things and investigate the facts. And after you go out and get another sub to finish the job, they've lost their options under the contract. But those aren't guaranteed options. Those are alternative promises that the case law says if you have four things you can do and three of them aren't available, you have to do the fourth. It doesn't say you can compel them to perform by any one of the four at your choice. No. I understand that. But they have to do. Which is what you do. They get the ability to consider doing any one of those four things. But there's no guarantee. You're giving that ability away when you don't give notice until after you do it. We don't. You're satisfying yourself. Your Honor, I believe the surety, if it wanted to guarantee that that ability was there, it should have written into the bond that the notification had to come before any work was completed. That was simple to put into Section 3.2 and it didn't do that. And the consequence is now it's total default on forfeiture. There's no timeline there. The question is whether there is a reasonableness requirement imposed by law. And I'm not sure how it's reasonable to think that you can give them the notice termination long after you've taken away three of the options for remedy. Well, if they want, I think that they could have put in the bond that the notice had to be given before any work was completed and then they would be assured. It takes me back to my question as to why notice wasn't given at the time of the termination. Your response was not an answer. Okay. Judge, I think the record establishes that they should have done that and didn't. I think the testimony of one of our witnesses in the deposition was that they missed it. You put that in a footnote, I think, somewhere in here. But the point is, what's the prejudice to the surety here when they have the alternative under Section 3.1? So you don't have any reason for not giving the termination, the notice at the time of the termination? No, Your Honor. I don't have a reason. They could have done that. They didn't. But there has been no prejudice to the surety that justifies the total forfeiture of the bond when, under Section 3.1, they still can raise those defenses if the Court reverses the lower court's order and remands the case to the district court, because in that instance, they have to show and demonstrate actual prejudice. And that's still available. Your best case for reading, there aren't any cases actually reading this form provision to not require timely notice, right? There are not decided cases on that, nor are there decided cases reading it to provide that the surety has to pay unless it can show prejudice, has to pay to the extent that it has to show prejudice. So you don't have cases under this provision, right, from any other court? No. This would be the only decision that provides the relief that the lower court provided. And the best case for you, the closest case for you, tending in that direction, is case or cases that we could impose the prejudice requirement on the surety here rather than... You can do that, and it's already in the case in the sense that under 3.1... Well, that's really it. I mean, that cuts the other way, because there's a prejudice requirement for the 3.1 notice, but not for the provision that you should hear, right? The 3.2. I know, but my point is it's still available to the surety to make the argument under 3.1 as long as they can demonstrate actual prejudice. Even if you reverse the lower court's decision on 3.2, 3.1 is still available to the surety, and the case can go forward in the district court on that basis. So no cases that you particularly want us to look at in your support other than what's cited in your brief? No. Okay, I'll just reserve the balance of my time. Thank you. Thank you, Bill. Good morning, and may it please the court. My name is Thomas Moran, and I am here on behalf of the appellee, Western Surety Company. We're here to request that the district court's decision be affirmed because U.S. engineering failed to comply with the bond's notice requirement when it terminated the principal under the bond united sheet metal without notice. Because of that decision, however it came about, Western Surety lost the right to choose how to perform under Section 5 of the bond. The bond was therefore discharged for failure to comply with the condition precedent. This case involves the American Institute of Architects AIA A312-2010 performance bond form. Before I get into the language of the bond, it's useful to note that this is a bond form that was insisted upon by U.S. engineering under the terms of the subcontract it had with united sheet metal. Because U.S. engineering had the right to determine which form would be used for the bond language. Now in Section 3 of the bond, it provides that the surety's obligation shall arise after three things occur. The first is that U.S. engineering provides notice to united sheet metal and Western Surety that it is considering declaring a default. That then triggers a procedure for scheduling and convening meetings. The second thing that has to happen is that U.S. engineering declares a default, terminates the contract, and notifies the surety. The third thing is that the owner agrees to pay the balance of the contract price to the surety or a contractor selected to perform the contract. Now as your honor noted, Section 4 contains a prejudice requirement that relates back only to Section 3.1. It does not relate to Section 3.2 or Section 3.3. If the parties, if the drafters of the bond had intended for there to be an actual prejudice showing by the surety for failure to comply with Section 3.2, they surely could have put that in there. However, they only referred specifically to Section 3.1. So it's a little harsh. Doesn't it seem that if you hire a surety to protect the work and you're busy getting it done and then you turn around at the end of the day and say, oh, we did have a bond here and we were super efficient in who we hired and mitigated all loss in getting a new contractor and it really minimized the loss to a very high degree. But hey, we have this bond. Yet your view is, uh-uh, you're scot-free because they didn't bring you in earlier. Your honor, Judge Williams spoke to this directly in the Hunt decision. He wrote that sureties that put notice requirements in their bond presumably are unwilling to submit to the vagaries of litigation exactly what it would cost, what it should have cost to complete the project. How do we get people in to come in and view the project and complete it? So everything that you were getting at in terms of the contractor, U.S. Engineering, saying that they did everything right, that they saved us money by coming in and completing the job, we don't have a way to test that. We didn't have an opportunity to bring in a consultant, which is what we usually do with surety lawyers, to bring in a consultant to view the project, someone with an extensive construction background to figure out what needs to be done on the project. That right, and it's determined to be a right in Hunt, it's determined to be a right in other applicable case law, and it's also determined to be a right in the bond itself. And U.S. Engineering also argues that your reading of the contract requires near instantaneous notice after termination of a contract, that it has to be pretty much contemporaneous with the termination to avoid it being too late to get the project back on track or too early so that you couldn't yet determine the scope of loss. And that's actually not a problem in your view. It would certainly be prudent to give notice of termination when that termination happens. It would be prudent for the contractor itself, because then you bring in the resources of the surety that it can rely on, and it can bring in people to view the job, to get boots on the ground if need be, or to tend to a replacement contractor if need be, and that depends on the circumstances. I could see there being a close case if there was a little bit of a delay in giving notice of the termination where we might be able to avoid the harsh result of a loss of any coverage under the bond, but this isn't a close case. They waited nine months until after the termination, let alone when there were first problems on the job. They waited nine months after the termination to provide any notice to the surety. So the surety gets a letter in the mail on June 12, 2014, nine months after the termination happened, basically saying, your principal was terminated. We're making a claim against the bond. The facts of this case make this basically the poster child of why sureties require notice, because by that time United Sheet Metal was out of business. The principal and employees had scattered to the winds. The job had been completed, so we're talking HVAC work here. A lot of that is behind walls by this point. So we literally would have had to come in and do destructive testing to figure out what had to be done, and surely that wasn't going to be acceptable to the owner, to the South African Embassy. I don't know that it would have been acceptable to U.S. Engineering, who would have had to come back in and fix it. But that's just an example of what a surety would need to do after it gets late notice. And really, in my opinion, late notice is no notice at all. It has to be notice, and the Hunt Court recognized this, it has to be notice that's calculated to give the surety an opportunity to exercise its rights under the bond. And there's reference in the briefs filed by U.S. Engineering, and there's a reference made today that the options under Section 5 are only performance obligations. How do you respond to Mr. Sutton's argument that under Hunt, the language was a little clearer because under the bond there, the obligee could only arrange for performance of the defaulted obligation by a different contractor after reasonable notice to the surety. And so that's a little clearer that there's a temporal requirement there or not. What's your response to that? Your Honor is completely right that the Hunt Court mentioned that. But before it even got there, the Hunt Court noted that the A311 bond form, which was at issue in that case, stated that whenever the principal shall be in default and declared by obligee to be in default, if the obligee has performed its contractual obligations, then the first option, first, surety may promptly remedy the default. The Court looked at that language first, and it said that that essentially implies a timely notice requirement because if the surety doesn't have timely notice, then that right that it has to promptly remedy the default is meaningless. And contracts in the District of Columbia have to be interpreted in such a way that there are no meaningless promises or illusory promises, and that's an interpretation that U.S. Engineering is advocating, that those promises, those rights, as the bond itself refers to in Section 5.4, are meaningless because U.S. Engineering can just bypass those by keeping the surety in the dark. And I don't think that that was intended by the AIA, who has issued numerous bond forms, and it certainly hasn't been recognized by the various courts, the few courts that have evaluated this bond form. You may not have the answer to this, but how often does a surety or does your client actually itself perform incomplete as opposed to bid it out or arrange for completion elsewhere? It does happen, Your Honor. I can't speak to this client in particular. I don't know that I've had a case with this particular client where it takes over. It's not necessarily the first thing that we look to do as surety lawyers when we get a performance bond claim. The preference is to tender generally. Or if it's the classic example of when a surety would want to take over is when the job is fairly close to completion and there are substantial contract funds remaining. And also we do get sometimes in government projects, the government is not eager to allow a project to be rebid because of bidding requirements and all that that I don't need to get into. So sometimes, particularly the federal government, will require a surety to come and take over the project. And when that happens, we do that. So it's not unheard of. You actually arrange a new sub, more likely than not. That's right, yes. So the surety can contract and do a takeover. It's been 50 years since I worked on one of these. That's what we do today. I don't think the principles have changed too much, Your Honor. So the surety can enter into a contract itself with the owner, a takeover agreement, and then it assumes primary responsibility for the completion of the job. But the bonds piece of this is two different things, arranging for a new subcontractor versus completing the work itself. Well, the result ends up being more or less the same, I guess. I was just inquiring specifically about undertake to perform and complete the construction contract itself. I was just curious. But I thought your answer was very informative. Thank you. Thank you, Your Honor. I see that my time is up, so I'll conclude by again asking that the Court affirm the decision of the District Court. Thank you. Thank you. Does Mr. Sutton have rebuttal time remaining? If you have rebuttal, you may take two minutes. All right. I think it's like two minutes or not. If you'd like two minutes, then no reason to take them if you don't. I have a couple of comments, Judge. I respect Mr. Moran's comments about the surety situation, but I believe Judge Sintel is correct. I've been a surety lawyer, unfortunately, longer than Mr. Moran, and I know for a fact that sureties don't go out and do construction. They subcontract it out. And so in this situation, if they had exercised that option, they would have gotten another contractor to do it. I do take issue with one of the comments that was made about having to go into the project and deconstruct what was finished and to get at the work that was done, as if that was the only way to evaluate what the cost was that was incurred by U.S. Engineering, when, in fact, you're perfectly able to do it today, even, because we have given them everything that's related to this project, the work that was done. They have the plans, drawing specification, the as-built drawings, the billings, all the information about what went into the $586,000 that's available. And it's perfectly possible to find an expert witness to testify whether, in September of 2013, that work could have been done for less. If it could have been done for less than U.S. Engineering did it, then they would be able to show that they were financially prejudiced without having to take the building apart, because the plans and drawings for, like, this building and what's above that ceiling is all laid out in some drawings in the government's offices somewhere that anybody could look at and an expert could render an opinion on without taking it apart. I believe that's the extent of my comments in rebuttal. Thanks very much for your time and attention today. Thank you. The case is submitted.
judges: Pillard, Katsas, Sentelle